■ In the Matter of GENESEE VALLEY MEDICAL CARE, INC., Appellant, v THOMAS A. HARNETT, as Superintendent of Insurance, Respondent.—Judgment unanimously modified, and, as modified, affirmed, with costs to appellant, and matter remitted to Superintendent of Insurance for further proceedings, in accordance with the following memorandum: Petitioner appeals from the dismissal of its article 78 proceeding brought to review a determination of the Superintendent of Insurance denying its application for increases in Blue Shield medical insurance rates averaging 20.9% and, instead, approving increases averaging 16.2%. The superintendent's determination that the requested increases were "excessive" under section 255 of the Insurance Law and his approval of the smaller increases were based, in part, on his conclusion that petitioner had been making payments, in excess of the maximum limits allowed for such payments by the Medicare Act, to physicians as assignees of claims of petitioner's subscribers under petitioner's complementary Medicare coverage plan. The superintendent directed petitioner to recover "by all appropriate means" such overpayments from all physicians who received them during 1972, 1973, 1974 and 1975 and further ordered that the amount of such overpayments "be set up as a receivable with a corresponding increase in surplus." In computing the lesser rate increases which he allowed, the superintendent considered the estimated amount ($700,000), to be recouped from the physicians, as having been added to surplus and thereby diminished the amount of additional revenues petitioner would need to rebuild its surplus to required levels (Insurance Law, § 256). The superintendent's determination that the ques-

tioned payments were unauthorized overpayments was neither arbitrary nor capricious but a reasonable interpretation of the applicable statutes. For the reasons stated by Special Term, such payments were contrary to provisions of the Medicare Act (US Code, tit 42, § 1395u, subd [b], par [3]), which provide that physicians in such cases must accept the "reasonable charges" for the particular services as approved by the secretary of HEW. Additionally, the payments in question contravened provisions in the standard contracts entered into between petitioner and participating physicians as well as the terms of the standard assignment by which the patients assigned their claims to the physicians, both of which contained terms specifically mandated by the Medicare Act (US Code, tit 42, § 1395u, subd [b], par [3]). Furthermore, the superintendent's interpretation of the governing Federal legislation was consistent with that of the Federal agencies which are, by law, charged with administering it (see McKinney's Cons Laws of NY, Book 1, Statutes, § 129). There is, however, no finding in the superintendent's decision pertaining to the amount of such overpayments and nothing in the record before him to support the estimated figure of $700,000 which he now professes was used in the rate increase computation. At the hearing, there was no mention of the claimed overpayments or of the superintendent's intention to order that they be recouped from the physicians who received them in 1972, 1973, 1974 and 1975. Petitioner asserts that it was deprived of any opportunity to question the legality or practicability of effectuating the directed recoupments. In view of the absence of findings pertaining to the amount of the overpayments and the insufficiency of the record before respondent at the time of his determination on this point and also on the questions pertaining to feasibility of the directed recoupments, informed review of the administrative determination as to these matters, without further evidence, is impossible (see *Matter of Montauk Improvement v Proccacino,* 41 NY2d 913; *Matter of Highland Brooks Apts. v White,* 40 AD2d 178; *Matter of Badrow v Common Council of City of Tonawanda,* 26 AD2d 611; *Berg v Michaelis,* 21 AD2d 322, 324; *Matter of Pasch v Gerosa,* 18 AD2d 982). The matter should be remitted to the superintendent for further evidence on these questions pertaining to the recoupment of the overpayments and the amount thereof. Despite its operation under the lower rates allowed by the superintendent in the decision of July 28, 1975 (16.2% instead of the 20.9% increase requested), by early 1976 petitioner's surplus had apparently grown to the extent that it found it necessary only to apply for an increase of 5.5% in its application for a rate increase to be effective on February 1, 1976. In passing on this application the superintendent found no need for any change in the rates. It does not appear whether any impairment of petitioner's surplus presently remains from the superintendent's treatment of the estimated amount of the recoupments ($700,000) as a receivable and his consideration of such amount as an asset and part of petitioner's surplus in his decision with respect to petitioner's 1975 application. It seems possible, however, that any such impairment still remaining may be remedied in future rate increase applications made to bring the statutory reserve into compliance with section 256 of the Insurance Law and that further proceedings with respect to the rates established in the July 28, 1975 decision may, as a practical matter, be unnecessary. (Appeal from judgment of Monroe Supreme Court—article 78.) Present— Moule, J. P., Cardamone,, Hancock, Denman and Witmer, JJ. [87 Misc 2d 524.]